IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-00562-RN

**Megan M. Day,**

                Plaintiff,

v.

**Nancy A. Berryhill,**
Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Order**

      Plaintiff Megan M. Day instituted this action in November 2017 to challenge the denial of her application for social security income. Day claims that Administrative Law Judge ("ALJ") Jody Hilger Odell erred in (1) failing to find that her impairments met Listing 4.05 in the Listing of Impairments, (2) failing to conduct a function-by-function analysis of the effect her fatigue had on her functioning, and (3) failing to properly weigh the medical opinion evidence. Both Day and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 21, 25.

      After reviewing the parties' arguments, the court has determined that ALJ Odell erred in her determination. ALJ Odell properly considered the effect of Day's fatigue when determining her residual functional capacity ("RFC") and sufficiently explained why Dr. Cohen's opinion did not deserve more weight. But ALJ Odell's step three consideration fails to discuss sufficiently the evidence in the record as it pertained to Listing 4.05. This error warrants further consideration

upon remand. The court thus grants Day's motion, denies Berryhill's motion, and remands this matter to the Commissioner for further consideration.[1]

I.  **Background**

In May 2014, Day protectively filed applications for disability benefits and supplemental security income. In both applications, she alleged a disability that began in September 2013. After her claim was denied at the initial level and upon reconsideration, Day appeared before ALJ Odell for a hearing to determine whether she was entitled to benefits. ALJ Odell determined Day was not entitled to benefits because she was not disabled. Tr. at 18–29.

ALJ Odell found that Day had multiple severe impairments: postural orthostatic tachycardia syndrome, bursitis of the right greater trochanter, arthralgia of the right knee, and obesity. Tr. at 20. ALJ Odell found that Day's impairments, either alone or in combination, did not meet or equal a Listing impairment. Tr. at 22.

ALJ Odell then determined that Day had the RFC to perform a range of light work with other limitations. Tr. at 23. She can occasionally climb ramps and stairs and she can frequently balance. *Id.* Day can never climb ladders, ropes, or scaffolds. *Id.* And Day can never work at unprotected heights or around moving mechanical parts and she cannot operate a motor vehicle. *Id.*

ALJ Odell concluded that Day could perform her past relevant work as an assistant manager and a deli worker as those jobs are generally performed. Tr. at 27. And ALJ Odell also determined that, considering her age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Day could perform. Tr. at 27–28.

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 18.

These include: protective clothing issuer, general office clerk, and office administrative support worker. Tr. at 28. Thus, ALJ Odell found that Day was not disabled. Tr. at 28–29.

After unsuccessfully seeking review by the Appeals Council, Day began this action in November 2017. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to determining whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson* v. *Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively* v. *Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). The court must affirm the Commissioner's decision if it is supported by substantial evidence. *Smith* v. *Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson* v. *Barnhart*, 434 F.3d 650 (4th Cir. 2005). The ALJ must consider the factors in order. At step one, if the claimant is engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed.

However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

      **C.**    **Medical Background**

Day has a history of syncopal episodes. In 2013, she experiences a worsening of her postural orthostatic tachycardia syndrome ("POTS"). Tr. at 388, 461–68, 484, 650. As a result, Day suffered repeated episodes of syncope or near syncope, sometimes leading to falls and emergency care treatment. Tr. at 56–58. Day described these episodes occurring with head movements or positional changes. Tr. at 51, 53, 57. Because of these episodes, Day also experienced dizziness, nausea, vomiting, and vertigo. Tr. at 53–58.

In September 2013, Day experienced a loss of consciousness during a medical appointment. Tr. at 24. Her primary care provider noted markedly low blood pressure and altered orientation. *Id.* They assessed Day with orthostatic hypotension. *Id.*

Two months later, Day underwent a tilt table study and providers also outfitted her with a Holter monitor for a 48-hour analysis of her condition. *Id.* Both studies confirmed mild orthostatic hypotension with reflex tachycardia. *Id.*

Dr. Larry Blankenship, a neurologist, evaluated Day's condition. *Id.* Following a normal neurological evaluation, Dr. Blankenship prescribed corticosteroid medication and beta-blocker therapy. *Id.*

In January 2014, Day presented to the emergency department for seizure-type activity. *Id.* An EEG of her brain confirmed moderate diffuse encephalopathy but no focal or epileptiform discharges. *Id.* Three months later, Day reported to Dr. Blankenship that she felt 50% better on the steroid medication. *Id.* Day reported one syncopal episode since her last visit, but she denied residual motor deficits, disorientation, memory lapse, or sensory disturbance. *Id.* Dr. Blankenship's neurological examination was benign. *Id.*

In May and again in June, Day visited the emergency department for syncopal episodes. Tr. at 25. Cardiopulmonary functioning results were within normal limits. *Id.*

In July 2014, Day underwent a cardiac consultation with Dr. Kirk Spencer. *Id.* He concluded neurocardiogenic syncope, not POTS, was the proper assessment. Tr. at 24–25. He advised Day to make slow transitions and to engage in more exercise. Tr. at 25.

Returning to Dr. Blankenship the next month, Day reported experiencing tired spells every two weeks. *Id.* She also stated that medications continued to be effective. *Id.* Dr. Blankenship's examination noted generally normal findings. *Id.*

The next month, Day sought treatment for her syncope. *Id.* An examination revealed normal findings. *Id.* She returned to the emergency department five months later for nausea and vomiting. *Id.* A neurological evaluation was again normal. *Id.*

Dr. Marc Cohen evaluated Day in March 2015. *Id.* Day reported tired spells, dizziness, and confusion. *Id.* Dr. Cohen's neurological examination was normal, and he concluded her POTS was stable. *Id.*

Four months later, Day reported that she was feeling better and her condition remained stable. *Id.* In December 2015, Day experienced an acute event, describing instability and dizziness, but she acknowledged she was not taking her medications as prescribed. *Id.*

Five months later, Day returned to Dr. Cohen complaining of exhaustion, nausea, and vomiting. *Id.* Day admitted she had discontinued use of her beta-blocker medication without medical approval. *Id.* Dr. Cohen's neurological examination yielded normal results. *Id.*

Day has also experienced pain in her back, hip, and knee. Tr. at 26. Testing has failed to disclose any significant deficits, and examinations have yielded generally normal findings. *Id.*

**D.     Listing 4.05**

Day contends that ALJ Odell erred by failing to find that her impairments met the criteria for Listing 4.05 (recurrent arrhythmias). The Commissioner maintains that Day does not meet the Listing criteria. The court finds that the evidence could support a finding that Day satisfies the criteria of Listing 4.05 and ALJ Odell's cursory analysis at step three warrants more consideration.

**1.     Overview of Listing of Impairments**

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan* v. *Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen* v. *Yuckert*, 482 U.S. 137, 153 (1987) (stating that the Listings are designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of proving that his or her impairments meet or medically equal a listed impairment. *Hall* v. *Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock* v. *Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. *Id.* § 416.925(d); *see also Mecimore* v. *Astrue*, No. 5:10-CV-64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ need not explicitly identify and discuss every possible listing; rather, he is compelled to provide a coherent basis for his Step Three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford* v. *Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). When there is "ample evidence in the record to support a determination" that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify "the relevant listed impairments" and compare "each of the listed criteria to the evidence of [the claimant's] symptoms." *Cook* v. *Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986); *see also Radford*, 734 F.3d at 295 (noting that "full explanation by the ALJ is particularly important" when "there is probative evidence strongly suggesting that [the claimant] meets or equals" a Listing).

### 2. Listing 4.05

Although ALJ Odell addressed Listing 4.05, Day contends her review was perfunctory. Failing to discuss sufficiently why Day's impairment did not satisfy this Listing, Day contends ALJ Odell's finding fails to comport with governing case law. Listing 4.05 provides:

7

> Recurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled (see 4.00A3f), recurrent (see 4.00A3c) episodes of cardiac syncope or near syncope (see 4.00F3b), despite prescribed treatment (see 4.00B3 if there is no prescribed treatment), and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope (see 4.00F3c).

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 4.05.

In discussing Day's postural orthostatic tachycardia syndrome, ALJ Odell found Listing 4.05 was not met because "the medical evidence does not show the impairment results in uncontrolled [], recurrent [] episodes of cardiac syncope or near syncope . . . despite prescribed treatment . . . and documented by resting or ambulatory electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope[.]" Tr. at 22. No further discussion of this Listing, or the medical evidence relevant to it, occurred at step three.

Day contends that the records shows her episodes of syncope were uncontrolled because they would occur without warning. She also asserts that their recurrent nature is well established in the record, with several episodes occurring in 2013 and 2014. Day notes that her condition persisted because, despite treatment with medication, she continued to to experience symptoms. Finally, Day points out that both a tilt-table testing and a Holter monitor documented her syncope.

The Commissioner contends that Day's own argument—that providers disagreed on the etiology of her condition—defeats her claim on this issue. Under section 4.00F3c, Listing 4.05 requires that there "be a documented association between the syncope or near syncope and the recurrent arrhythmia" as opposed to another cardiac or non-cardiac disorder being the cause of the syncope. Because one provider suggested epilepsy, a non-cardiac disorder, was cause of her condition, the Commissioner argues that Day fails to satisfy this Listing. But the lack of consensus

8

about the cause of Day's arrhythmia establishes, at a minimum, that the step three analysis required more than a mere recitation of the criteria for Listing 4.05, with no discussion of the evidence, and a conclusory statement that it was not met.

That ALJ Odell found that Day's condition improved with medication, and she had a recurrence when she stopped medication, does not rescue her brief step three evaluation. The evidence may show that, with medication, Day's episodes of syncope and dizziness occurred with less frequency, but she continued to experience symptoms. This, too, suggests a more thorough analysis of the condition at step three is required where the evidence could support a finding that the Listing criteria have been met.[2]

Because there is evidence showing that the origin of her syncope may be cardiac in nature, a more-detailed analysis at step three was necessary. Because further evaluation of Day's condition under Listing 4.05 is warranted, this issue merits remand.

### E. Residual Functional Capacity

Day contends that the evidence establishes that ALJ Odell failed to consider the effect of her fatigue when determining her RFC. The Commissioner maintains, and the undersigned agrees, that ALJ Odell properly considered Day's fatigue when determining her RFC.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96–8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically

---

[2] Nor is the court persuaded by the Commissioner's argument that Day cannot satisfy the criteria of Listing 4.05 because her condition has responded to treatment. The position that Day's condition is "mostly controlled," (D.E. 26 at 7), ignores the clear language of section 4.00F3a which finds Listing 4.05 appropriate to evaluate arrhythmias that are not *fully* controlled by medication or other means. 20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing § 4.00 (emphasis added).

determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

The ALJ must provide "findings and determinations sufficiently articulated to permit meaningful judicial review." *DeLoatche* v. *Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also Wyatt* v. *Bowen*, 887 F.2d 1082, 1989 WL 117940, at *4 (4th Cir. 1989) (per curiam). The ALJ's RFC determination "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Mascio* v. *Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Social Security Ruling ("SSR") 96–8p). Furthermore, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295. Fourth Circuit precedent "makes it clear that it is not [the court's] role to speculate as to how the ALJ applied the law to [her] findings or to hypothesize the ALJ's justifications that would perhaps find support in the record. *Fox* v. *Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015).

Social Security Ruling 96–8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that

may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p. The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

There is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio*, 780 F.3d at 636. But "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki* v. *Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The function-by-function requirement can be satisfied by reference to a properly-conducted analysis by a state agency consultant. *See, e.g., Linares* v. *Colvin*, No. 5:14-CV-00129, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with [Soc. Sec. Ruling] 96–8p." (citing *Lemken* v. *Astrue*, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. 26 July 2010))).

As noted above, ALJ Odell determined that Day could perform light work with additional postural and environmental limitations. Tr. at 23. Day argues that ALJ Odell's RFC determination disregarded her fatigue, reports of which are well-documented in the record, and its impact on her ability to complete a full workday. Because *Mascio* encourages remand where an ALJ fails to address a relevant function despite contradictory evidence in the record, Day contends that outcome is appropriate here.

11

ALJ Odell discussed Day's medical history, including her obesity, musculoskeletal conditions, POTS, and related symptoms. Tr. at 22–27. While Day may have experienced fatigue, ALJ Odell did not find her statements fully credible. Tr. at 23, 26. ALJ Odell noted Day's complaints of fatigue but remarked that her symptoms appeared to increase with quick positional changes and rapid head movements. Tr. at 25. Several treatment records, including more recent visits in July 2014, and November and December 2015, reflect that Day specifically denied she was experiencing fatigue. Tr. at 469, 482, 543, 774–75, 816, 821, 980. And despite her ongoing complaints of fatigue, ALJ Odell found that it presented no limitation in Day's ability to perform activities of daily living such as personal care, preparing meals, and doing laundry. Tr. at 21.

ALJ Odell gave partial weight to the state medical consultants, both of whom opined that Day could perform medium work. Tr. at 26. She observed that Day's ongoing complaints and need for medical treatment counseled against work at this exertional level. *Id.* ALJ Odell also remarked that there was no evidence in the record that would preclude Day from performing light work. Tr. at 26.

Here, the record contains little objective evidence of fatigue. But ALJ Odell specifically noted that she considered fatigue in determining Day's RFC. Tr. at 26. ALJ Odell modified Day's range of light work by limiting her climbing and balancing as well as eliminating any work at unprotected heights, around moving mechanical parts, or operating a motor vehicle. Tr. at 22. ALJ Odell stated that these restrictions "accommodate her syncopal episodes, dizziness, and fatigue[]" and concluded further restriction was not appropriate. Tr. at 26. Having specifically explained that the RFC addresses any limitation attributable to fatigue distinguishes this case from *Mascio* and its progeny. *See Dawyot* v. *Berryhill*, No. 7:15-CV-676, 2017 WL 3142103, at *4 (W.D. Va. June

14, 2017) (ALJ gave a sufficient explanation of why the claimant's complaints of fatigue did not translate into a limitation in the RFC).

Aside from her own statements, Day has failed to identify specific evidence supporting her position that she cannot perform the exertional demands associated with light work. For this reason, she has not shown error by ALJ Odell in her RFC determination. Thus, her argument on this issue lacks merit.

### F.     Medical Opinion Evidence

Day also argues that ALJ Odell erred in considering Dr. Cohen's assessment. The Commissioner asserts that ALJ Odell properly considered all the opinion evidence. The undersigned finds no error in ALJ Odell's consideration of Dr. Cohen's opinion.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson* v. *Comm'r of Soc. Sec.,* 600 F. Supp. 2d 740, 752 (W.D. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

Opinions of treating physicians and psychologists on the nature and severity of impairments must be given controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig* v. *Chater*, 76 F.3d

585, 590 (4th Cir. 1996); *Ward* v. *Chater*, 924 F. Supp. 53, 55–56 (W.D. Va. 1996); SSR 96–2p, 1996 WL 374188 (July 2, 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In determining the weight to be ascribed to an opinion, the ALJ should consider the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore* v. *Colvin*, No. 0:11–2865-TMC, 2013 WL 837643, at *2 (D.S.C. Mar. 6, 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from "other sources" who do not qualify as "acceptable medical sources" cannot be given controlling weight but are evaluated under the same factors used to weigh the assessments of physicians and psychologists. SSR 06–03p, 2006 WL 2329939, at *2, 4 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (identifying "other sources"). An ALJ must explain the weight given opinions of "other sources" and the reasons for the weight given. SSR 06–03p, 2006 WL 2329939, at *6; *Napier* v. *Astrue*, No. TJS-12–1096, 2013 WL 1856469, at *2 (D. Md. May 1, 2013).

Similarly, evaluations from sources who neither treat nor examine a claimant are considered under the same basic standards as evaluations of medical opinions from treating

providers whose assessments are not given controlling weight. *See* 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e). The ALJ must offer an explanation of the weight given to these opinions. *Id.; Casey* v. *Colvin*, No. 4:14-CV-00004, 2015 WL 1810173, at *3 (W.D. Va. Mar. 12, 2015), *adopted by*, 2015 WL 1810173, at *1 (Apr. 21, 2015); *Napier*, 2013 WL 1856469, at *2.

More weight is generally given to the opinion of a treating source over the opinion of a non-treating examining source. Similarly, the opinion of an examining source is typically given more weight than the opinion of a non-examining source. *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2). Under appropriate circumstances, however, the opinions of a non-treating examining source or a non-examining source may be given more weight than those of a treating source. *See, e.g., Mastro* v. *Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a non-treating examining physician than to those of a treating physician); SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on issues reserved to the Commissioner, such as disability, are not entitled to any special weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996). But the ALJ must still evaluate these opinions and give them appropriate weight. SSR 96–5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator must evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

ALJ Odell discussed the evidence from Dr. Cohen. Tr. at 25, 27. She observed that, when he issued his statement, Dr. Cohen had examined Day only once, five months earlier. She found that Day's normal neurological exams and stable condition failed to support Dr. Cohen's assessment. ALJ Odell also remarked that Dr. Cohen's opinions seemed out of proportion with his later evaluations and testing, as well as with other objective medical evidence. Tr. at 27.

Day argues that ALJ Odell failed to accord sufficient weight to Dr. Cohen's opinion as a treating physician. In considering Dr. Cohen's opinion, Day contends that ALJ Odell reasons to accord it sufficient weight are flawed. First, she argues that ALJ Odell failed to build a logical bridge between the evidence and her review of Dr. Cohen's assessment and, in doing so, failed to recognize the evidence corroborating his opinion.

But ALJ Odell considered Dr. Cohen's August 2015 opinion after thoroughly summarizing the medical evidence. Tr. at 23–27. Her decision reflects Day's complaints of dizziness, fatigue, and nausea to providers. *Id.* But ALJ Odell also observed that the evidence showed normal or mild findings upon testing and improvement in her symptoms with medications, though there were periods of non-compliance. *Id.* In sum, ALJ Odell sufficiently considered all the evidence, without regard to its favorable or unfavorable influence on Dr. Cohen's opinions.

Day also maintains that the normal or unremarkable examination findings cited by ALJ Odell fail to undermine Dr. Cohen's opinions. But treatment notes from Dr. Cohen, who appeared to have examined Day only twice, reflect generally normal findings. Tr. at 715–18, 895–99. In March 2015, he described her POTS as "grossly stable" and observed that she had 3–4 spells of dizziness every year. Tr. at 715, 718. Day next saw him over a year later, in May 2016, when she reported worsening dizziness, but she had discontinued a medication, which may have exacerbated

her symptoms Tr. at 25, 895. Day's examination again failed to reveal any remarkable findings. Tr. at 895–99. The lack of notable objective findings challenges Dr. Cohen's restrictive limitations.

Day also contends that treatment notes reflecting her condition was stable do not cast doubt on Dr. Cohen's findings. Yet the stability of her condition, coupled with generally normal examination findings noted by Dr. Cohen and other providers, fail to support the degree of limitation he assessed. And it raises the question of what evidence justified Dr. Cohen's opinion which, as noted above, was quite limiting.

Finally, Day contends that ALJ Odell failed to explain her finding that Dr. Cohen's assessment was out of proportion with records and opinions by identifying the purported contradictory evidence. Yet a review of her decision discloses the evidence ALJ Odell found to be inconsistent with Dr. Cohen's opinions. As discussed above, ALJ Odell reviewed Day's treatment history, examination findings, testing results, other providers' opinions, her reports of symptoms, and the treatment modalities used and their outcomes.

Moreover, ALJ Odell incorporated Dr. Cohen's driving restriction into Day's RFC. To the extent Dr. Cohen concluded that Day could not work, this determination addresses the ultimate issue of disability, a finding reserved exclusively to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2, 5 (July 2, 1996). And Dr. Cohen's opinion that Day could not work is inconsistent with ALJ Odell's RFC determination, a finding, as noted above, that has the support of substantial evidence. As substantial evidence supports ALJ Odell's determination, Day's argument on this issue lacks merit.

### III. Conclusion

For the forgoing reasons, the court grants Day's Motion for Judgment on the Pleadings (D.E. 21), denies Berryhill's Motion for Judgment on the Pleadings (D.E. 25), and remands this

matter to the Commissioner for further consideration. This action is dismissed. The Clerk shall close this case.

Dated: January 3, 2019

_____
Robert T. Numbers, II
United States Magistrate Judge